The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to give their attention. For the Court is now sitting. God save the United States and this Honorable Saeed. Thank you, Your Honor. Eric Brignac, may it please the Court, Eric Brignac for Christopher Lancaster. In Chambers, this Court correctly held that, quote, it would pervert Congress' intent to maintain a career offender designation that it is as wrong today as it was at the time of the original sentencing. This Court also correctly said that it was an extreme position for the United States to argue in contrast that a court must perpetuate a guidelines calculation error that was an error even at the time of the original sentencing. In Chambers, this Court held that it would pervert Congress' intent to recreate a guidelines error that was error at the time of the original sentencing and is error today. This Court also held that the government's argument to the contrary was an extreme position to force a court to perpetuate a guidelines error that was an error even at the time of the original sentencing. How is it an error even at the time of the original sentencing? Your Honor, the error in this case... I thought we were talking about intervening authority between the time of the original sentencing and the first step back hearing. It is, Your Honor, intervening authority, but critically, just like in Chambers, it was a case that clarified what the career offender guideline always meant. We are not asking this Court today to apply any guideline amendments. We are not asking this Court today to apply any statutory amendments other than the Fair Sentencing Act, nor were there any... we're not asking this Court, because it's not before the Court today, to apply a different guidelines manual. It is the exact same statutes and guidelines, word for word, that applied in 2009. The only difference is that we now understand, in a way we did not in 2009, what those words mean. The federal conspiracy is not a career offender predicate, and it was never a career offender predicate. That was the distinction that Chambers made. Counsel, do you contend that the sentence could be vacated because we now should apply Chambers to a non-retroactive change in law, or do you contend that the rule from McCullough-Norman is retroactive and therefore compelled by Chambers? Thank you, Your Honor. The rule from McCullough-Norman has not been held to be retroactive, and that question was not briefed by the parties, so we are not here today relying on the idea that Norman's retroactive. We are relying on the language from Chambers, and obviously, the government's response, this is all centering around the question of retroactivity, and I think it's critical. Let's look at exactly what Chambers said, and this is page 672, 673, when it explains why the retroactivity there mattered. It did not get into Teague v. Lane. It did not get into 2255. It did not get into technical habeas finality door opening. Instead, it said that it mattered because, and this is a direct quote, because the error in that case, and they're talking about the Fifth Circuit case in Hedgewood where it wasn't defound retroactive, may not have been a mistake at the time of the defendant's sentencing. So what this court was doing in Chambers is saying that because this error was retroactive and because in Hedgewood it wasn't, that perhaps the error in Hedgewood was not an error at the time, but we can cut through all that, and we know that the error was an error at the time. For example, if it was not recognized as an error either at the sentencing or if someone had taken a direct appeal, it wasn't recognized as an error during the direct appeal. And if it may be that the wording of the career offender statute has not changed, but if the interpretation of the guidelines provision has changed from one thing to another, because the law is not simply the provision, but how the provision is interpreted. And if the interpretation of the provision changes, then don't we face the question of applying a non-retroactive guidelines error retroactively? Thank you for that, Your Honor. And respectfully, I have two responses. First, Your Honor, the government could have made the exact argument you made. The government could have made that argument in Chambers. If Mr. Chambers, at the time of his original sentencing, had said, hey, you're calling this a felony. It's not a felony in North Carolina under North Carolina's bizarre sentencing scheme. This is not punishable by over a year. He would have lost that at the time. It turns out you were wrong. And this board clarified that in sentence. Secondly, Your Honor, I would look at page two, three of our reply brief. And there we cite Rivers versus Roadway Express. It's actually a relatively common canon of construction that when a case interprets a statute, it doesn't just say, or in this case a guideline, what that statute or guideline means going forward. It's a declaration of what it always meant. But isn't there, there's an agreement, isn't there, that there was a guidelines error in the case, that there was a guidelines error? And I assume also there is an agreement that the particular guidelines error here, nobody has contended that it's retroactive. And so I wonder if we're not faced with the basic question of whether Chambers requires district courts at the time of a 404B First Step Act hearing to apply non-retroactive changes in the guidelines. I, you seem to be moving the issue around a little bit, but I'm wondering if we are not faced squarely with the question of whether, however it's answered, of whether Chambers requires the district court to apply the First Step Act sentencing, non-retroactive changes in the guidelines. And I was under the impression that there was, in the intervening time between the original sentencing and the First Step Act hearing, a change in guidelines interpretation. And McCollum came along and indicated that there was an error. And so there seemed to be a consensus that there was an error. And at the same time, there seemed to be a consensus that there was a non, that the error was non-retroactive. But isn't that the question that we squarely face? Yes, Your Honor. We are squarely faced because Norman has not at this point been declared retroactive. We are squarely faced with whether Chambers requires this. And it does. Yes, we are. And it does because Chambers says you must calculate the guideline range correctly, apply the old law, in this case the 2009 law, and calculate it correctly. And when you are doing that, you are not obligated to make the same mistakes that you made at the time. And the word retroactive, Your Honor, if I may continue, I think is confusing the issue here. And I think it's a bit of attempting to place a square peg into a round hole. Retroactivity as a legal term of art applies in the 2255 Teague v. Lane context. And what it does there is it says, you know, every federal defendant when he's convicted can file a 2255 motion. You have a very large funnel at the front end. Everyone within a year can file one. Retroactivity narrows that funnel at the bottom. And it says for certain errors, only get to come back into court on a 2255 collateral attack in this narrow class of retroactive errors. 404, Your Honor, is different because Congress has answered the question that retroactivity would otherwise answer. Congress has said for this very narrow group of individuals to fall into this time zone of having a crack offense where they didn't get fair sentencing act relief, they do get to come into court. Finality is upset. We do not have finality here. It's upset to a limited extent. Yes, exactly, Your Honor. It's upset to a limited extent. The question is, is it only upset as to the Fair Sentencing Act of 2010? That's what the debate over the as if clause was all about. Yes, Your Honor. And obviously, there's a pretty down the circuit split on that question. This court came down on one side of the split in chambers. This court denied on bonk rehearing in chambers. So, I mean, that's certainly a huge question. But it's a question that this court asked and answered. Counsel, if I could, if I could. Judge Wilkinson's question and your answer, I mean, I think you would say that, you know, because of language, you know, outside the holding in chambers, that we are bound to apply, you know, other aspects of it to non-retroactive intervening changes in law. And I realize you didn't brief this, but I really, yeah, you don't, I guess, have to answer it. But yeah, isn't there a pretty good argument that Norman and McCollum are retroactive because, one, they, as you alluded to earlier, you know, clarify law and there's this old rule under the whole, you know, league, you know, or teague-type cases, and two, because it's a substantive rule that alters the class of persons, you know, that are career offenders? And if that's the case, do we really have to extend chambers? Or because, I mean, chambers, you may say retroactivity is a you want to rely on chambers to avoid the circuit split question that Judge Wilkinson just raised, but you seem to not want to stick to its holding that it's retroactive. And I wonder if we really have to extend it based on the way retroactive law has been considered in other ways. Your Honor, I do think that that Norman rule would be found retroactive. I do think it is a close case, and I'm sure the government has opinions on this, because it would be just a guidelines error as opposed to Simmons, which happened to be a statutory and guidelines error. And certainly, if this court wants supplemental briefing on the that we do not think it is necessary, because the retroactive, non-retroactive distinction is about finality, and Section 404 asked and answered finality. And to my knowledge, every other circuit, no other circuit considers this retroactive or non-retroactive distinction to be the linchpin on which Section 404 rises or falls, whether you get to fix it. What about the Fifth Circuit case, which made an explicit point, and Chambers itself says that the Fifth Circuit case, I forget what the exact name of it was, that what it was dealing with was the question of retroactivity. Yes, and Your Honor, that was the linchpin. And again, I do not think that that's where this court went in Chambers, and I'm actually, I'm sorry, Your Honor, I'm not sure exactly which Fifth Circuit case. It's the Hedgewood case. I mean, Judge Wilkinson's right. And the Chambers case talks about the first reason Hedgewood's not persuasive is that the issue there had not been deemed retroactive. I mean, he's exactly right on that. And Your Honor, may I answer that? My red light did just come on. Yeah, you may answer it. Thank you, Your Honor. So, and I'm glad you pointed to that language, Judge Quattlebaum. You know, first, I would say two things. Hedgewood said they relied on the as-if language to say that you don't apply any other changes. So I'm not thinking that Hedgewood itself actually relied on retroactive, non-retroactive. And then I would look at the page, top of page 673 in Chambers, where it says the intervening Fifth Circuit case law that would have removed Hedgewood's career offender enhancement has not been declared retroactive. And then here's why this court in Chambers said that. Hedgewood, therefore, does not squarely address the question presented here because the error in that case may not have been a mistake at the time of retroactive in Chambers. It was not about whether we fit into the T.B. Lane box. Well, you know, in this case, we have a clear ruling of retroactivity because you have Simmons which indicates the retroactivity in the Chambers case. And you had Simmons which clearly indicated the retroactive nature of the error. And then you have Simmons, I think, indicated the error. And you had the other case, Miller, following on Simmons, which indicated that the Simmons rule was retroactive. And so that was what Chambers was dealing with in that context, which was a Simmons error that had subsequently been ruled in Miller retroactive. And that's the narrow question that it was dealing with. And you don't have that here. You don't have any clean ruling of the error that we're talking about in McCollum or whatever is retroactive. You have a clean ruling in Chambers that the statutory error there was retroactive. And here, you don't have that. So is that a ground for maybe not distinguishing Chambers but limiting it because that was the question with which Chambers dealt a clear ruling of retroactivity. And here we don't have that. In fact, we have a consensus that the guideline error is not retroactive. Aren't those very aren't those different situations? Um, Your Honor, to bounce off of Judge Quattlebaum's point, I do not think the question I think whether Norman McCollum error is technically retroactive under TV lane is an open question. And I'm sure me and the government take different positions. What is clear you contending that it's a substantive conduct rule on the tag? Your Honor, I'm contending that now I do think if this I do not think it's an easy question. Honestly, I do believe it is retroactive. Is it a procedural rule or a substantive conduct? It changes the punishment. So Your Honor, I'm sorry, you asked a direct question. I think it is a procedural rule because it gets to the calculation of the guidelines error. And again, I'm certainly happy to keep talking about it. I just I do think Why don't you why don't you raise that on rebuttal if you wish? Okay. Yes. Thank you, Your Honor. Thank you very much. All right. We thank you. Um, Mr. Mr. Brogdon. Let's hear from let's hear your side of it. Good morning. May it please the court. My name is David Bragdon and I represent the United States. This case does squarely present the issue of whether chambers should be extended to cover non retroactive error. And I'll I'll talk about chambers a little bit in a minute. I'll also talk about how correcting the error doesn't doesn't really correct the error in most of these cases as well. But before I get to that, I did want to state it is the government's strong position that the error here is not retroactive. It's not retroactive because it doesn't change the statutory maximum or minimum at all. And so it's just a function of the guidelines range. It doesn't extend additional punishment beyond the statutory maximum. And this court and others have held that that it hasn't been ruled retroactive. That that's correct as well. It also has not been ruled retroactive in chambers there. There had been a ruling that it was retroactive. I think the question you were talking about was the TIG question. Yes, that's right. And so so there, the courts that have addressed this error have have held that it's not retroactive. And the ones we cited a couple from district courts in our brief. Mr. Braggin, this is this is Judge Nima. Chambers is my big question mark in this appeal. And I probably should ask your colleague this same question. But it's hard for me to understand how chambers handled retroactivity. It looks to me as if the government in chambers did raise that as an issue and chambers rejected it. But I would really like to hear your interpretation of chambers because it seems to me chambers is written more broadly such that retroactivity is irrelevant. But I may be wrong on that. Thank you, Your Honor. And I'll bring a couple of quotes at the very beginning of chambers when it describes its holding. It says, quote, We now hold that any guideline error deemed retroactive, such as the error in this case, must be corrected in a first step at resentencing. And then it goes on as it examines the error in this in in its case. Yeah, but my point is this, I suppose I recognize that. But if it was retroactive, then that narrows the scope. And there was a discussion of Hedgewood in that regard. But the chambers court didn't stay with the narrow scope. It went it seems to suggest there's I may be wrong. It seems to suggest a cited the pepper case in the Supreme Court. And if there's a resentencing required, then you apply everything that's been corrected. You start over from scratch, so to speak, at the sentencing and everything's free game, including conduct since the original sentence. So that's a conundrum for me. I'm very interested in hearing how you can explain that for me. Well, I don't think that that chambers held or suggested that a plenary be sentencing as well. And there there is a specific footnote in there that says, you know, district courts of how you agree that that the error here can be corrected without plenary resentencing. But it does use language. It does use language that this is not simply a modification or a and it says we're imposing a new sentence and it goes ahead and rejects a C2 interpretation of the Supreme Court made, which was rejecting the plenary sentencing. Well, I and then goes on to say during the resentencing, you do the factors under 3553A and finally, it's troubling because that reading of chambers opens things up more than I think Congress intended. And so that then brings the question is how free are we to constrict and where can we constrict chambers to get more in line with what I think was intended was a fix of their sentencing act? And I guess to answer that question, I do not read chambers that broadly. I think that that certainly chambers chambers uses the language about the retroactive nature of the air a lot. It also specifically references Miller and in finding that a Simmons error was retroactive and Miller relies on the on the T line of jurisprudence to do that. And I think when chambers discusses recalculation, the guidelines and what's going to happen in this regard, it's not radically different than what the other courts have have held should happen in a sentencing even when they're not correcting non retroactive error. For instance, I think all of the courts to almost all the courts to my knowledge agree that the 3553A factors should be considered. I think that they agree that post conviction conduct can be considered and applied 3661 and 3661 has been construed in Pepper versus United States and basically the court made it lucid in Pepper that you start over you can bring anything that you could have if it was an initial sentencing and the chambers court spend some time in doing that to justify bringing in conduct post sentencing conduct for the resentencing. It's hard to square away and maybe there are ways we can snake through it, but I'm just looking for your ideas that takes on chambers fairly. I don't think we should be extending chambers and I'm only expressing my own initial reactions now to the argument, but it seems to me how do we not open up all the finality of thousands of cases by reading chambers broadly, but at the same time being faithful to chambers at least to its core holding. I guess when I looked at chambers, there's a point in time where they compare a retroactive error to a typographical mistake or just a simple clear mistake that's readily fixable. Wasn't chambers court addressing the government's position there? In other words, is to suggest that when an order is retroactive, when it's the order that's so fundamental that courts have held, it should be applied retroactively. This tool, this tool to fix crack powder disparities can also be used to correct those retroactive errors, but I don't think that chambers, I don't think chambers would have used the word retroactive so often in its case and at such key moments in describing its holding if it was already ruling on what to do with non-retroactive error. Why would there be the need if we were to read chambers as when you re-sentence, you apply the existing law at the time of re-sentencing and why would there be the need to even discuss retroactivity? Retroactivity was raised, was the gateway to get all of this under the Fair Sentencing Act, I suppose, or the First Step Act. I think that chambers was incorporating the principle Teague B. Lane of retroactivity into the First Step Act as a way of viewing, because it is another type of post-conviction proceeding. Teague B. Lane applies to habeas post-conviction proceedings. This is a different kind, admittedly, but in considering what other errors besides crack powder to consider, the court and chambers incorporated this mechanism to determine whether or not the error should be correctable. I did want to say just a couple words on the effect of this. There's a lot of perspective. There is no way to correct an error in a case like this, even if the court wanted to, because the parties relied on the law as it existed at the time. In this particular case, the government proposed a plea to the defendant that allowed him to plead guilty to count one, which at the time qualified him as a career offender and now doesn't, but counts two and three also qualify him as a career offender. If the law had been what it is now at the time, the government almost certainly would have insisted on a plea to count three, and the defendant would still be a career offender in this case. If we allow non-retroactive errors to be fixed, if we allow them to be changed, what we create is arbitrary results, not what would have happened. If I understand the argument that the defendant is making in this case, the intervening change in law required a resentencing, not just a modification or reduction, required a resentencing, and in imposing a resentencing, you start over and do everything that you would have in initial sentencing as chambers relied on Pepper and 3661. I think that's the argument, that there is no necessity to look at retroactivity because during resentencing, you're going to use the current law. That's what I thought their position was. Well, this court specifically distinguished the Fifth Circuit's opinion in Hedgewood by saying that Hedgewood thought a full or plenary resentencing was necessary. It said chambers did not request a plenary resentencing and certainly does not need one to correct the sentence error. I don't read chambers as requiring a full resentencing. I think that it's a narrower approach than that. It is looking at fixing this particular issue, the crack powder disparity, and then while doing that, chambers determined that courts could look at retroactive error and also consider that in making the change. I don't think you just said could look at retroactive error. The chamber said it must look at retroactive error. That's correct. I apologize for that misstatement. Yes, courts must look at that, but it didn't go further than that. It didn't say a full resentencing was necessary, and it didn't say that non-retroactive error also needs to be fixed. This is supposed to be a limited remedy, the as-if language here that is the controlling language. I think of what would that sound like if we were using it in real life. In the brief, I use the example of we need to revise our budget as if the new contract will be signed, or another example would be buy groceries as if they will need to last two weeks, or pay the employees as if there were no government shutdown because we have multi-year funding. What all of these examples illustrate is when you use as if, you're narrowing in on one specific modification. I understand that, and I think it's a powerful argument, but certainly the other circuits have latched onto it. The question I have is, does that just re-argue chambers? I think the order that came out, I think I voted for rehearing in bank on the grounds of the, and it's a powerful argument, but the question I have is whether chambers either explicitly or implicitly rejected that, and whether in revisiting the as-if argument, whether we are just trying to re-argue the chamber's case. That's the conundrum. At least that's the problem for me, is what we obviously owe respect to circuit precedent. That's perfectly clear, and then the question comes down to, well, what does circuit precedent mean? Is it the narrow express holding that is on the first paragraph or first page of chambers where they explicitly use the term retroactive, and are we justified in following that phraseology quite literally, or does precedent extend beyond that and oblige us to follow more general statements that are offered in support or explanation of that narrow holding, and sometimes the more general statements that are offered in support of a narrow holding are broader than the expression of the narrow holding itself, and so what I'm asking you is what does respect for circuit precedent mean? Just strictly going by the literal language of that first page with that word retroactive in it, or are we required to follow certain more general statements that may indicate a broader holding, as Judge Niemeyer indicates, that we're in a resentencing, and that means you apply current law, so what does respect for precedent mean in your view? Thank you, Your Honor. I think respect for precedent does go beyond just a literal looking at, okay, we can distinguish this language. I think the court should look at the opinion as a whole. I agree with that, but I will say that retroactive does not just appear on the first page. It appears on five separate pages. It permeates the opinion, both as it's explaining its holding and as it's distinguishing other cases, and so I think the way I read Chambers is it did not reach this issue. What it did is it said, this kind of error, what we have here, retroactive error, we want that corrected, but I don't think that the logic or the language suggested that the court also should correct all other error, and I think in doing this, this court charted a middle path between what is now a circuit split. You have circuits who say, we're never going to fix error, and circuits that say, do, and Chambers saying, this kind of error, the kind that under our Supreme Court line of cases is fundamental enough, but we fix it in habeas cases, that kind should be corrected here. Let me ask you this. Would the district court, if it's not required to apply non-retroactive error, would the district court be required to apply non-retroactive error? In other words, you have two rather absolute positions, and one is that you're not required to do anything other than apply the Fair Sentencing Act of 2010, and then you have the other situation that says you're required to, once you get into a 404B hearing, you're required to conduct a plenary re-sentencing, and then you're saying that, well, Chambers articulated a middle ground between these two absolute positions, and say, yes, you're required to apply the retroactive, but not the non-retroactive errors, and what I'm asking you is, is there another middle ground? Are there essentially two middle grounds, and is there another middle ground that would say, with respect to non-retroactive errors, that the district court retains a large degree of discretion over sentencing, and that it is permitted, but not required to apply non-retroactive error? I see I'm over my time. May I answer the question? Yeah, sure. I think that my answer would be, I don't know that that, I don't, I haven't thoroughly considered that issue, but I don't know that that would be a good middle ground to draw. Certainly, the district court has an abundance of discretion in deciding whether or not to reduce the sentence, and how much to do so, and so we agree completely with that discretion. In terms of the guidelines range itself, I think it makes less sense to say, well, it can modify it to make it new, or it cannot modify it. I think the guidelines should probably be one thing, or consistent in all cases, and so I would not propose that as a middle approach. Do you think the middle ground was in holding that retroactive errors must be applied, but not non-retroactive errors? You think that's the middle ground between the circuit split? Yes, your honor. Can I ask you one question? If we were to say that a district court could not correct non-retroactive errors, how would we explain the two aspects of chambers? One, that courts are instructed to recalculate the guidelines anew, and two, they're allowed to take in post-sentencing conduct into the new sentencing. What justifies that if it were limited just to retroactivity? Thank you, your honor. With regard to the first point, with respect to recalculating the guidelines, that is something that commonly has to be done in these cases, because many times when the statutory range changes, the career offender guideline range changes as well. Very often, there is a recalculation of guidelines, and regardless of the circuit you're in, the court has to look at even the crack-powder distinction may change the guidelines, and so really what this court would be saying is, of course you recalculate the guidelines, and in doing that, you change anything related to the fair sentencing act affected, and then you also change retroactive errors, but you do not change every other error, because this is a limited remedy. Regarding the second question, which relates to the scope of the sentencing, I think what the court would say is 35-53, these factors that we consider, the discretion that a court has in sentencing, that's a part of what's built into the first step act itself. The court specifically says that a district court has discretion to, you know, well it doesn't say those exact words, but it says that the district court may reduce a sentence, and then it says that nothing in the act requires it to do so, so there's certainly a lot of discretion built in. When Chambers referenced what's going to occur, it simply specified what the court should consider in exercising that discretion. Judge Niemeyer, do you have further questions that you wish to ask? Well, I don't think I need to ask them, but I have a lot of further questions. I don't mean to cut you off. No, I'm satisfied. Thank you. Let's move on. Judge Quattlebaum, do you have some further questions you would like to ask? No, thanks. I'm fine. All right. Well, let's hear then in rebuttal from Mr. Brignac. Thank you, Your Honor. I want to make one sort of quick point and then sort of get into, I think, some of the issues Judge Niemeyer raised to make sure our position is clarified. And I guess I would just say, you know, obviously if the court thinks that it is compelled to really hinge things on this Teague v. Lane retroactive distinction, it is going to create a lot of litigation. If every time an error like this comes up in the district court, and then certainly on Teague v. Lane full analysis, that may be what this court holds, but it is going to create a lot of work. And I'm not sure that's what Congress intended. Why would that be, Mr. Brignac? Because in the Chambers case, you had a very clean holding of retroactivity. And why wouldn't, going forward, either you have a clean holding of retroactivity with respect to the rule or you don't? Because, Your Honor, if it had not been held before, then I think if I was reading Judge Quattlebaum's original question many minutes ago, we would have to do that in the first instance in the district court. So it would create this litigation. Why wouldn't we require a prior ruling of retroactivity? I mean, which the district court is to take as a given or not given. Either it has been previously ruled retroactive or not. Well, Your Honor, there would have to be a first case where that would come up. So it's still going to have to be done. Judge Niemeyer, you were talking, and I just want to be clear about plenary. Let me have an answer to that question. Why wouldn't that be a cut and dry thing the way it was with Simmons and Miller? Because one of the things that would concern me about what you said was that district courts and the judiciary ought to be very cautious about making retroactivity holdings on their own. In this case, Congress was the vehicle for the retroactivity when it talked about the as-if clause and the Fair Sentencing Act. But I find it seems to me that when you're saying this is going to require a lot of litigation, you seem to be reposing the hold certain guidelines, errors, to be retroactive. And I wonder whether that isn't a point for Congress or the Sentencing Commission or the Supreme Court. It was cut and dried in Chambers, Your Honor. Respectfully, it was not cut and dried in Chambers. It was cut and dried in Chambers. It was cut and dried in Chambers. To go back really quickly, Judge Niemeyer, in Wersing, and it was footnote one in Wersing, these are not plenary resentencings. The defendant does not need to be present. These are not full resentencing. Defendant does not need to allocute. The Peters case talks about how you will not be able to re-address facts that were previously found, only where facts were left open. But what you do do is calculate the guidelines correctly. And Judge Wilkinson, your last point to opposing counsel, and my light is on, may I just finish for 30 seconds? Yeah, go ahead. Thank you, Your Honor. Your last point was sort of could a district court choose to apply, say, norm and error or not? And the answer is no, it couldn't. If this court agrees with the government here, it is telling district courts, it is telling the defendants, it is telling their family members, it is telling everyone that this is a mistake and you have to make the mistake. Someone else will come in in five minutes for a full, for his sentencing and everyone will agree he's not a career offender. But the guy who was there for a 404 beforehand, even though... Well, I know, but that's a general argument in favor of retroactivity itself, because that's always the case when you don't hold something to be retroactive. You have someone on a sentence at one point in time, and maybe at a different point in time, courts interpret something in a different way. So, I mean, the point you just made seemed to be a general argument in favor of retroactivity, which I think opens up a large number of philosophical questions. But why don't you go ahead and just make a concluding statement, if you would, Mr. Brignac? The red light is not a time to get into philosophical statements. Your Honor, Norman error was error in 2009. Norman error is error today. There's no reason district courts should be barred from recognizing that error and correctly calculating the guidelines. Thank you. All right. Judge Niemeyer, do you have some questions of Mr. Brignac? No, thank you. Judge Quattlebaum, do you have some further questions? I do not. Thank you. All right. I want to thank you both for your fine arguments, and we very much appreciate you being here. I'm sorry we can't come down and greet you. And thank you for the efforts that you've made, but we very much appreciate them nonetheless. And now I'm going to ask the courtroom deputy to give us a five minute break and let's resume in five minutes with the county board of Arlington versus express scripts. All right. Thank you. This honorable court will take a brief recess.
judges: J. Harvie Wilkinson III, Paul V. Niemeyer, A. Marvin Quattlebaum Jr.